Fremont-Smith, Thayer, J.
This case is an appeal from an enforcement order of the Barnstable Conservation Commission wherein the Commission reaffirmed previous enforcement orders. Plaintiff Paul A. Gargano’s alleged prohibited activities have been the source of constant litigation since 1998.[1] The Commission has counterclaimed, seeking enforcement of its prior orders, including its orders for removal of a miniature golf course consisting of putting greens installed without Gargano’s filing of a prior notice of intent or approval by the Commission. The Commission also contends that Gargano has improperly mowed a grassed area behind his garage, placed boardwalks, installed underground lights and sprinklers and cut a thicket of vegetation, all in an area which is behind or adjacent to his garage and is within the fifty-foot buffer zone from a resource area provided by the Wetlands Protection Act or the hundred-foot buffer zone provided by Barnstable’s municipal by-laws for the protection of wetlands.
For enforcement of its orders, it is the Commission’s burden of proof to substantiate a violation. Bourne v. Austin, 19 Mass.App.Ct. 738, 741-42 (1985).
Gargano’s earlier appeals, although dismissed on procedural grounds, were never adjudicated on the merits and the Commission’s previously-appealed enforcement orders have now been effectively resurrected by its most recent “enforcement order” of July 28, 2003,[2] which is the subject of Gargano’s present appeal.[3]
Based on the Court’s own view of the property and on all of the credible evidence at trial, the Court makes the following findings and-rulings.
Gargano’s Engagement in Activities Within the Protected Wetlands Area
The Commission’s exasperation with Gargano has understandably resulted from his repeated activities in the protected wetlands area without his filing a notice of intent and without the Commission’s prior approval. The Commission is justifiably galled by this, as the Act makes it illegal to alter a protected area without its prior permission.
G.L.c. 131, 40 provides in relevant part that: No person shall remove, fill, dredge or alter[4] any bank, riverfront area, fresh water wetland, coastal wetland, beach, dune . . . marsh, . . . bordering on the ocean or on any estuary creek, river, stream, pond, or lake . . . other than in the course of maintaining, repairing or replacing, but not substantially changing or enlarging, an existing and lawfully located structure . . . without filing written notice of his intent . . . and without receiving and complying with an order of conditions
As noted in the “Commentary” following 310 CMR 10.02,
The Department has determined that activities within Areas Subject to Protection under G.L.c. 131, 40 are so likely to result in the removing, filing, dredging or altering of those areas that pre-construction review is always justified, and that the issuing authority shall therefore always require the filing of a Notice of Intent for said activities. (Emphasis supplied.)
Thus, Gargano’s continuation of such activities in the protected area, except to the extent the Court determines that they are grandfathered or exempted by the Act, will be henceforth enjoined unless a “notice of intent” has first been filed by Gargano and the activity has been approved by the Commission.
Gargano’s Installation of Irrigation and Lighting
Gargano does not dispute that he installed, without a previous “notice of intent” or defendants’ approval, in-ground lighting and irrigation in the buffer areas, but contends that these have already been removed. To the extent that they were installed by Gargano[5] and have not been removed, Gargano will be ordered to remove them and all attendant tubing or pipes within thirty days.
Gargano’s Cutting of Grass and Pruning of Plants
Gargano has admitted that he has cut the grass without prior approval. He has, however, at various times in the past, sought the Commission’s approval to cut his grass as he deemed necessaiy, but it has agreed only that he may cut the grass, at most, two times a year. The Commission never responded to his most recent “notice of intent” and his request for a hearing in that regard in 2003, and no hearing date was ever scheduled by the Commission.
More importantly, aerial photographs which predate his ownership of the property indicate that grass-cutting in the disputed area had been done for decades by previous owners so that a “grand-fathered use” in this regard exists. See 310 CMR 10.58(6).
As the Court observed during the “view," moreover, plaintiffs neighbor has not been prohibited from cutting his grass on an adjacent grassy area within the buffer zone. When a Commission witness was asked at trial why the Commission has not similarly objected to the neighbor’s grass cutting, the Commission’s witness testified that, if no complaint is made about *292 such grass cutting, it is the Commission’s practice to give a landowner “the benefit of the doubt” as to whether such grass cutting was a pre-existing use.[6]
Most importantly, when asked what, if any, adverse impact Gargano’s grass cutting could have on the wetlands or on the protected buffer areas, the Commission witness admitted that he could discern none. Gargano’s own expert, moreover, who inspected the property in 2003, similarly testified to the lack of any adverse impact.
A Certificate of Compliance was provided to Gar-gano by the Commission in November 1996, and, in 2001 and 2007, the Department of Environment Protection (“DEP”) inspected the premises and concluded, by letters dated August 23, 2001 and May 11, 2007, that “pruning of landscaped areas” and “mowing of lawns” were not violative of the statute. See 310 CMR 10.58(6) and 310 CMR 10.02 (pruning and mowing are “minor activities” not subject to the Act). As a comparison of the relevant sections of the Town by-law with the Wetlands Act indicates that the bylaw is not more stringent than the Wetlands Act as regards “excepted” or “grandfathered” activities, the DEP’s superseding orders prevail over the ordinance as well as over the Commission’s orders. Degrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. 132, 133-36 (1991); Hobbs Brook Farm Property, supra.[7] Accordingly, the Court will dismiss the Commission’s counterclaim in this regard.
Gargano’s Alleged Cutting of Thickets and Underbrush
In spite of the Commission’s admission of spying on Gargano through binoculars from across the inlet, its witnesses at trial admitted that they had never been able to catch Gargano actually cutting a thicket or underbrush within the buffer areas. A Commission employee did testify, however, that she had gained access to Gargano’s property (without any authorized permission)[8] and had witnessed newly-cut stubble of a thicket. The photographs offered in support of this contention, however, do not establish any area of newly-cut stubble and the historical aerial photographs do not show any significant previous uncut stubble area or undergrowth in the area. The Commission also complains that Gargano pruned vegetation or brush within the protected area. While there was weak evidence of this at the trial, and a court must defer to any agency’s findings of fact if they are supported by “such evidence as a reasonable mind might accept as adequate to support a conclusion after taking into consideration opposing evidence in the record,” Hotchkiss v. State Racing Comm’n., 45 Mass.App.Ct. 684, 696 (2000), pruning of vegetation, like grass cutting, is not a prohibited activity and is thus exempt from the Act. 310 CMR, supra. Accordingly, the Court will dismiss the Commission’s counterclaim in that regard.
Gargano’s Installation of a Miniature Golf Course
Gargano admits that he installed miniature golf-putting holes without seeking the Commission’s approval, and the evidence indicates that at least two of the putting greens are located within the protected buffer area. However, when asked at the trial how the putting greens adversely affected the protected wetland area, the Commission’s witness admitted that he could discern no adverse impact, and Gargano’s expert similarly could discern no adverse impact.
Nevertheless, the installation was subject to G.L.c. 131, 40 and 310 CMR 10.02 which requires the filing of a notice of intent. Accordingly, the Court orders Gargano to file a notice of intent within thirty days so that the Commission can decide whether, based on substantial evidence, the artificial grass in the golf course is or is not permeable to water so as to adversely affect the water drainage. If the Commission, after hearing determines on substantial evidence that the golf course does adversely affect the protected area, plaintiff is ordered to remove the golf course insofar as it is within the protected area within an additional thirty days.
Gargano’s Installation of Boardwalks
The boardwalks were similarly not shown at the trial to adversely impact the wetlands or the buffer zones in any significant way, but a notice of intent should have been filed. Accordingly, the same procedure shall be followed by the parties as outlined above for the golf course.
ORDER
1. Gargano is ORDERED to remove, within thirty days, any remaining lighting and irrigation fixtures and piping or tubing which he installed in the ground and to file a notice of intent as to the miniature golf course and boardwalks located in the buffer area. If, after hearing, the Commission determines, based on substantial evidence, that the golf course and/or boardwalks adversely affect the protected area, Gar-gano shall remove them within an additional thirty days. Except for continuation of the activities which the Court has determined to be non-violative of the Act and of the town by-law, Gargano shall cease and desist from engaging in any other activities or alterations in the buffer zones without first filing a notice of intent and obtaining the Commission’s prior approval. The Commission’s counterclaim seeking enforcement of its enforcement orders in all other respects is DISMISSED.
2. The Commission shall cease and desist from issuing, in the future, or recording in the Registry of Deeds, any further notices of violation or enforcement orders to Gargano with respect to his continuance of the same activities which the Court has determined not to be violative of the Wetlands Act or of the town by-law. Within thirty days after Gargano has removed his irrigation and electrical alterations and his removal (if ordered by the Commission pursuant to para *293 1, supra) of so much of the golf course and boardwalk as the Commission finds are adversely affecting the protected area, it shall record in the Registry of Deeds a certificate indicating that all previously-recorded notices of violation and enforcement orders are now discharged.
Any violation of this Order by either side may be made the subject of a petition for contempt of Court.

 Plaintiffs appeals of prior enforcement orders were twice dismissed by the Superior Court on procedural grounds (plaintiff having failed to file his appeals within the statutoiy deadlines or having failed to exhaust his administrative remedies) which dismissals were then affirmed by the Appeals Court on those procedural grounds.

 This July 28, 2003 “enforcement order” reiterated the Commission’s earlier “enforcement orders” and alleged that violations had occurred by Gargano’s “construction of a miniature golf course and trenching for additional sprinkler pipes,” and by “fill brought in to level 2 or 3 holes.” It ordered removal of the miniature golf course and all lighting, water spigots, electrical boxes and it prohibited (after completion of the required replanting) “cutting of vegetation or mowing.”

 Had the Commission simply sought the Court’s enforcement of its earlier orders, this case would have been over. But by issuing an entirely new enforcement order, the issues were revived so as to permit Gargano’s present appeal. Cf. Gargano v. Barnstable Conservation Comm’n, 58 Mass.App.Ct. 1106 (2003), where the court held that the Commission’s provision of an additional “review” as a result of Gargano’s request for reconsideration was not sufficient to “reset the clock” for an appeal of the 1998 order of enforcement or the 2001 order of conditions, and Conservation Comm'n of Falmouth v. Pacheco, 49 Mass.App.Ct. 737 (2000), where the court held that the defendant had waived his right to contest the Commission’s jurisdiction by failing to assert any objection to jurisdiction either in his response to the Commission’s prior orders or in his response to its most recent orders.
Here, Gargano has timely challenged the Commission’s most recent enforcement order in his present action. As discussed below, moreover, the Commission’s earlier enforcement orders, at least with respect to grass-cutting and pruning of landscaped areas, were nullified by subsequent “superceding orders” of the D.E.P. which leave the most recent enforcement order as the only extant order in that regard.

 310 C.M.R. 10.04 and Section 14 of the By-Laws both define the term “alter,” as, inter alia referring to changing of preexisting drainage characteristics, flushing characteristics, salinity distribution, sedimentation patterns, flow patterns, or flood retention characteristics. The definitions of “private water supply” in the Regulations and the By-Laws also are very similar. See 310 C.M.R. 10.05; Barnstable Municipal By-Laws 14.

 Previous irrigation and electrical fixtures which are now nonfunctional were installed by a prior owner.

 Although the witness thus indicated that there had been complaints against Gargano in this regard, he would not identify who had complained.

 Such a superseding order by the DEP preempts a contrary Commission order unless the violation “rests on a wetlands by-law” which is more stringent than the Wetlands Act. Hobbs Brook Farm Co. v. Conservation Comm’n of Lincoln, 65 Mass.App.Ct. 142 (2005), at 149. Here, the Commission did not “rest its decision on the town by-law,” which is, in any event, not more stringent than the Wetlands Act in regard to what are “grand-fathered” or “excepted” activities involved here.

 She showed her credentials to a gardener, who, in Gargano’s absence, acquiesced in her inspection of the premises. While an earlier “order of conditions” had specified that the Commission might inspect Gargano’s premises at any time, this “order of conditions” was nullified by the DEP’s superseding orders and would appear, in any event, to be unconstitutional if it were interpreted to permit unauthorized entry onto Gargano’s property without a warrant or even advance notice.